FRANKLIN MUTUAL INSURANCE COMPANY, Respondent,
v. MEEME TOWN MUTUAL FIRE INSURANCE COMPANY,
Appellant.

*No. 242. Submitted under sec. (Rule) 251.54 February 5, 1975.—*
*Decided April 28, 1975.*
(Also reported in 228 N. W. 2d 165.)

For the appellant the cause was submitted on the brief of *Jack McManus, Ronald A. Ritchie* and *McManus & Haukom,* all of Madison; and for the respondent the cause was submitted on the brief of *John R. Holden* of Sheboygan.

HEFFERNAN, J. On January 18, 1973, Franklin Mutual Insurance Company recovered a judgment in the sum of $6,635.90 for breach of contract against Meeme Town Mutual Fire Insurance Company. An order denying Meeme's motion for a new trial was entered on March 20, 1973. Meeme has appealed from both the judgment and the order.

Franklin Mutual Insurance Company and its predecessor were the reinsurers on fire insurance risks undertaken by Meeme. During the period from February 1, 1963, through June of 1964, Franklin alleged that Meeme owed it an amount computed at the rate of 20 cents per hundred dollars for fire insurance risks ceded by Meeme to Franklin during that period. Meeme, however, paid only at the rate of 15 cents per hundred dollars and claimed that it was obligated under the contractual agreement to pay no more.

We conclude that, after February 1, 1963, when Meeme raised the rates on the fire insurance policies it issued, it was obligated to recompute its reinsurance payments to Franklin at the rate of 20 cents per hundred dollars. Franklin is not barred from collecting the higher rate because of waiver or estoppel, because it originally had no knowledge of Meeme's increased rates and, after gaining that knowledge, insisted on payment of the higher rate. We affirm the judgment of the trial court and the order denying a motion for a new trial.

Franklin's rights arise out of a reinsurance agreement or treaty entered into between its predecessor company and Meeme on March 4, 1957, and a subsequent agreement entered into between Franklin and Meeme in May of 1963. Each of these agreements was a treaty for reinsurance. A reinsurance treaty is described in 13 Appleman, *Insurance Law and Practice:*

"Reinsurance is a contract whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person." P. 460, sec. 7693.

"Reinsurance, to an insurance lawyer, means one thing only—the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss." PP. 433, 434, sec. 7681.

The March 4, 1957, agreement provided:

"All reinsurance to be paid at the prevailing rate to insure all such risks as allowed by Town Mutuals under the Wisconsin Statutes."

The corresponding clause of the May, 1963, reinsurance treaty provided:

"The rate on all reinsurance shall be an amount which shall be equivalent to the issuing rate, less return pre-

mium, less commission, in accordance with the rate charged and the commission granted by the Home Company. It is further agreed that a 10% commission shall be deducted and retained by the home company from the total premium at the end of each month."

Under these treaties, from March 4, 1957, to June 30, 1964, Meeme paid Franklin a reinsurance rate of 15 cents per hundred for the reinsurance of farm fire insurance. Prior to February 1, 1963, Meeme was charging the original insureds at the rate of 15 cents per hundred for fire insurance and paying that same rate for reinsurance to Franklin. On February 1, 1963, without notifying Franklin and unbeknownst to Franklin, Meeme commenced charging its insureds 20 cents per hundred but continued to pay reinsurance to Franklin at the rate of 15 cents per hundred.

Franklin first learned that Meeme had increased the rate to its original insureds late in February or early March of 1964. Thereupon, in early March, the secretary of Franklin wrote to Meeme asking that payment be made at the 20-cent rate. Meeme, however, continued to pay at the rate of 15 cents per hundred. Payments at that rate were deposited by Franklin in the usual course of business. However, on March 16, 1964, Meeme was billed for the additional 5 cents on the rate of reinsurance.

By action of the Franklin board of directors on July 6, 1964, the existing reinsurance agreement dated May 9, 1963, was ordered terminated, to be effective on September 13, 1964. After receiving this notice of termination and until the termination of the agreement, Meeme paid Franklin at the rate of 20 cents per hundred for reinsurance, but declined to pay the obligation which Franklin concluded was owed on the reinsurance agreements theretofore.

After action was commenced by Franklin to collect arrearages and after a trial to the court, the trial judge concluded that Meeme was obligated to pay the higher rate, 20 cents, to Franklin from the time it commenced

charging that rate to its own insureds. He concluded that the phrases, "prevailing rate" and "issuing rate," used in the 1957 and 1963 agreements, respectively, had the same meaning, *i.e.,* that reinsurance was to be paid at the same rate that the original insurer had charged its customer for the risk.

To the extent any of the facts are disputed, it is clear that the recital of the chronology and the events of these treaties by witnesses for Franklin were believed by the trial judge. Accordingly, no questions of credibility or sufficiency of the evidence are before us, since the factual conclusions implicitly made by the trial judge were not contrary to the great weight and clear preponderance of the evidence.

The question, then, before the court is confined to a question of law, the interpretation of the meaning of the contract provisions entered into between the parties. In respect to the agreement entered into in 1963, the only words called into question by Meeme are "the issuing rate." These words present no ambiguity and require no interpretation.

The plain and undisputable meaning of the May, 1963, agreement is that Franklin shall be paid the sum equal to the rate at which the policies were issued to their original insureds. There is no room for any interpretation of these terms, because no construction is required. Practical construction is available only when an ambiguity exists in the underlying contract. *Jorgenson v. Northern States Power Co.* (1973), 60 Wis. 2d 29, 35, 208 N. W. 2d 323. Moreover, even were there any ambiguity, practical construction cannot be resorted to "in the absence of knowledge of the facts and circumstances to which the construction relates." *Burroughs v. Joint School District* (1914), 155 Wis. 426, 431, 144 N. W. 977.

The trial judge obviously concluded from the facts that Franklin did not learn that Meeme was charging its cus-

tomers 20 cents per hundred until late in February, 1964. When it learned of that fact, it asserted its right under the specific contractual provisions. Nor did it have prior constructive notice of Meeme's rate increase because Meeme had filed its rates with the commissioner of insurance. There is no doubt that, in respect to some persons, the filing of the new rates was constructive notice, but we have pointed out in *Thompson v. Dairyland Mut. Ins. Co.* (1966), 30 Wis. 2d 187, 192, 140 N. W. 2d 200, that:

"Constructive notice is neither notice nor knowledge but is a policy determination that under certain circumstances a person should be treated as if he had actual notice."

No sound policy reason has been set forth by Meeme to require a party to a contract to periodically check public records to determine whether the other party has changed its rate structure. There is sound policy in some cases to impute constructive notice prior to entering into a contract but not thereafter.

Under the specific terms of the contract, the term, "issuing rate," in the May, 1963, contract means the rate at which Meeme issued individual policies to its customers. The reinsurance rate which Meeme is obligated to pay to Franklin will, therefore, rise or fall depending upon the rate Meeme charges its original policyholder. In accordance with the general theories of reinsurance rates, whenever Meeme raises rates to reflect increased risks, Franklin will also receive the higher rates to cover the risks that it is reinsuring.

While the term, "prevailing rate," in the 1957 contract is a less precise term than "issuing rate," it is clear that its meaning is the same. The trial court, in tracing the entire course of dealings between Franklin and its predecessor and Meeme and considering the nature and purpose of reinsurance contracts, concluded that it was

the intent of the parties "that the rate charged by the home company less return premium and less commission was to be paid to the reinsuring company." This finding is supported by the entire history of the dealings between the parties, and that finding must be sustained.

Meeme contends, however, that the practical construction given to the term, "prevailing rate," was in fact ambiguous, because of the practical construction placed upon the meaning of that term by the parties after the change in the issuing rate from 15 cents to 20 cents. Meeme argues that, in fact, Franklin, by taking payments at the 15-cent rate and depositing those funds to its account, was accepting Meeme's construction that the 15-cent rate, and not the 20-cent rate, was the practical construction of the existing contract.

It should be pointed out that, to the extent that argument is correct, it influences only a small portion of Franklin's claim, for the new agreement, which is legally beyond dispute, as pointed out above, became effective on May 9, 1963. However, Franklin cannot be bound by the acceptance of the 15-cent-per-hundred rate until such time as it was shown that it knew that, in fact, Meeme was charging a 20-cent rate and without proof that it then acceded the full satisfaction of its claim in return for the lesser payments. The record is clear, however, that as soon as Franklin learned of Meeme's raise in issuing rate, it asserted its claim for the higher rate. The mere fact that it accepted less than full payment did not estop it from asserting its contractual rights, nor would it constitute a waiver of the rights under the contract.

The doctrine of estoppel was recently defined in *City of Milwaukee v. Milwaukee County* (1965), 27 Wis. 2d 53, 66, 133 N. W. 2d 393:

"An estoppel . . . consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment."

Certainly, nothing in the facts indicates that any conduct of Franklin induced reliance thereon by Meeme. While, prior to the discovery of the failure to pay the contractual rate, the sums tendered were accepted by Franklin, such acceptance was not to the detriment of Meeme, for its obligation was fixed and certain under the terms of the contract. Nor was there any waiver of any right, for waiver "is the voluntary and intentional relinquishment of a known right." *Von Uhl v. Trempealeau County Mut. Ins. Co.* (1966), 33 Wis. 2d 32, 37, 146 N. W. 2d 516.

Waiver and its relationship to estoppel was also discussed in *McNaughton v. Des Moines Life Ins. Co.* (1909), 140 Wis. 214, 224, 225, 122 N. W. 764:

"There can be no waiver without at least implied intent to waive *based on knowledge,* actual or constructive, of the facts. Where the reasonable inference from the whole situation between parties in contractual relations, is that one of them with knowledge, actual or constructive, has waived or abandoned a claim of right, and the other, relying thereon, has acted accordingly, generally speaking, an effectual intent to waive is implied 'regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary,' whether there is any element of estoppel, strictly so called, or not." (Emphasis supplied.)

It is apparent that there was no waiver. While the inadequate payment was properly taken by Franklin, simultaneously Franklin was asserting its right to the full contractual amount.

We conclude that the trial judge properly held that the 1957 agreement also required that reinsurance be paid for at the same rate at which policies were issued by Meeme Town Mutual Fire Insurance Company.

*By the Court.*—Judgment and order affirmed.