In the MATTER OF the LIQUIDATION OF AMERICAN EAGLE INSURANCE COMPANY:

AMERICAN EAGLE INSURANCE COMPANY, Petitioner,

v.

WISCONSIN INSURANCE SECURITY FUND,
Business Flying Enterprises, Estate of
Allen M. Gelin, Lucas Lindner and the
Estate of and Val R. Lindner, Respondents.

WISCONSIN REINSURANCE CORPORATION,
Plaintiff-Appellant,†

v.

WISCONSIN INSURANCE SECURITY FUND,
Defendant-Respondent.

WISCONSIN REINSURANCE CORPORATION,
Plaintiff-Appellant,†

v.

WISCONSIN INSURANCE SECURITY FUND,
Defendant-Respondent.

Court of Appeals

*No. 2004AP274. Oral argument September 23, 2004.
—Decided July 21, 2005.*

2005 WI App 177

† Petition for review denied 10-14-05.

(Also reported in 704 N.W.2d 44.)

On behalf of the plaintiff-appellant, the cause was orally argued and submitted on the briefs of *Arnold P. Anderson* of *Mohr & Anderson, LLC,* Madison.

On behalf of the defendant-respondent, the cause was orally argued and submitted on the brief of *Stephen P. Lucke* of *Dorsey & Whitney LLP,* Minneapolis, Minnesota.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. DYKMAN, J. Wisconsin Reinsurance Corporation (Reinsurance Corp.), a reinsurer of town mutual insurance companies, appeals from a judgment affirming a $15,047 assessment of Reinsurance Corp. by the Wisconsin Insurance Security Fund (Fund) and dis-

missing an action alleging procedural infirmities.[1] Reinsurance Corp. contends that the Fund exceeded its statutory grant of authority by its assessment. The Fund asserts that WIS. STAT. § 646.31(2)(a)1. (2001–02)[2] permits town mutuals to submit claims to the Fund, and consequently subjects the insurers of town mutuals to assessment under WIS. STAT. § 646.51(3)(am)2.[3] While the statutory text reasonably supports either of

---

[1] This appeal concerns two Dane County Circuit Court cases, Nos. 2001–CV-3496 and 2002–CV-2571. These cases were consolidated before the liquidation court in the American Eagle Insurance Company liquidation, Case No. 1998–CV-135. American Eagle Insurance Company, Business Flying Enterprises, Estate of Allen M. Gelin, Lucas Lindner, and the Estate of Val R. Lindner were not parties to this appeal.

[2] WISCONSIN STAT. § 646.31(2) (2001–02) stated, in pertinent part:

(2) CLASSES OF CLAIMS TO BE PAID. No claim may be paid under this chapter unless the claim is in one of the following classes:

(a) *Residents.* 1. The claim of a policyholder, including a ceding assessable domestic insurer which is organized under ch. 612 and a domestic insurer that is a bona fide policy holder of the insurer in liquidation, who at the time of the insured event or of the liquidation order is a resident of this state . . . .

Unless otherwise noted, the relevant portions of the statutes discussed in this opinion have remained unchanged in substance since July 17, 2001, the date of the Fund's assessment of Reinsurance Corp. A 2003 revision to WIS. STAT. § 646.31(2)(a)1. replaced "which" with "that" following "ceding assessable domestic insurer," and deleted "who at the time of the insured event or of the liquidation order." 2003 Wis. Act 261, Sec. 83. Because these changes are not relevant to the issues in this case, hereafter we omit any reference to a statutory date for WIS. STAT. § 646.31(2)(a).

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

these interpretations, we conclude that the legislative history of the statute shows the intent to permit the Fund to assess reinsurers of town mutuals such as Reinsurance Corp. Finally, we conclude that Reinsurance Corp. waived most of its objections to the Fund's procedures, and we reject on the merits those procedural objections it has not waived. We therefore affirm the circuit court's judgment.

## BACKGROUND

¶ 2. In 1997, American Eagle Insurance Company became insolvent and was under a liquidation order. As directed by WIS. STAT. § 646.51, the Wisconsin Insurance Security Fund identified the solvent insurers of policyholders who could file claims on the Fund as a result of the American Eagle liquidation. The Fund interpreted WIS. STAT. § 646.31(2)(a), under which a claim may be filed by "a ceding assessable domestic insurer that is organized under ch. 612 [the town mutual insurance chapter]," as permitting town mutuals to file claims on the Fund for risks they "cede," or reinsure, with another party. The Fund then assessed insurers with whom town mutuals had insured or reinsured certain risks. The Fund determined that Reinsurance Corp. was among these, and found its portion of the American Eagle assessment to be $15,047.

¶ 3. Reinsurance Corp. filed an administrative appeal with the Fund challenging the assessment. Reinsurance Corp. submitted interrogatories, requested documents pertaining to the assessment of Reinsurance Corp. and sought a hearing before the Fund, measures Reinsurance Corp. claimed it was entitled to under Chapter 227, the Wisconsin Administrative Procedure Act. The Fund responded that it was not a state agency

subject to Chapter 227 procedures, but that it would conduct the appeal in a fair and equitable manner consistent with the procedures of Chapter 646. It averred that it would attempt to comply with Reinsurance Corp.'s discovery requests, but that a hearing was not necessary because the appeal concerned only issues of law. The Fund asked Reinsurance Corp. to submit a brief outlining its legal arguments against the assessment.

¶ 4. Reinsurance Corp. then sought a declaratory judgment in circuit court (Case No. 2001–CV-3496, hereinafter the "procedures case") ordering the Fund to comply with its procedural demands. The court stayed this action to permit the Fund to make a determination on the merits of the appeal. The Fund then appointed an examiner, who held a hearing and made certain factual findings, and concluded that the Fund had statutory authority to assess Reinsurance Corp. Reinsurance Corp. ultimately appealed this decision in a second circuit court action (Case No. 2002–CV-2571, hereinafter the "merits case").[4]

¶ 5. The merits case and the procedures case were consolidated before the American Eagle liquidation court. Reinsurance Corp. subsequently filed a motion to set aside the assessment, and a separate motion to remand to take testimony to remedy alleged procedural errors by the Fund. The Fund moved for summary judgment on the procedures case.

¶ 6. The court affirmed the Fund's June 2002 decision, which included the Fund's interpretation of its statutory authority to assess Reinsurance Corp. and its

[4] The Fund refers to the two actions as the "merits case" and the "procedures case," respectively, and we adopt these labels to sort out the complex procedural posture of this appeal.

findings of fact. The court granted summary judgment to the Fund on the procedures case, concluding that Reinsurance Corp. had waived some procedural objections and, regardless, the Fund's procedures were sufficient. Reinsurance Corp. appeals.

¶ 7. More facts about the complicated procedural history of this appeal will be set out in our discussion of Reinsurance Corp.'s procedural complaints, beginning at ¶ 37. For present purposes, we turn now to the circuit court's decision in the merits case affirming the Fund's rejection of Reinsurance Corp.'s administrative appeal.

## THE MERITS

### *Standard of Review*

¶ 8. When reviewing an administrative appeal of an agency[5] determination, we review the decision of the agency and not that of the circuit court. *Clean Wisconsin, Inc. v. Public Service Comm'n of Wisconsin*, 2005 WI 93, ¶ 36, 282 Wis. 2d 250, 700 N.W.2d 768. Here, the Fund's determination rejected Reinsurance Corp.'s administrative appeal, upholding the agency's construction of a provision of Chapter 646 of the Wisconsin statutes as authorizing the assessment of a town mutual reinsurance company. Generally, statutory inter-

---

[5] Though we refer to the Fund as an "agency" for the sake of convenience, we decline to address the question of whether the Fund is a state agency within the meaning of WIS. STAT. § 227.01(1) (" 'Agency' means a board, commission, committee, department or officer in the state government, except the governor, a district attorney or a military or judicial officer."). As we discuss later, this question is not properly before us today.

pretation presents a question of law, which we review de novo. *State v. Lombard,* 2004 WI 95, ¶ 17, 273 Wis. 2d 538, 684 N.W.2d 103.

¶ 9. However, the Fund contends that we must apply a more deferential standard of review because it is charged with administering Chapter 646 of the Wisconsin Statutes. Reinsurance Corp. responds that because the provisions under review concern the scope of the Fund's power, the Fund's interpretation is not entitled to deference, citing *Capoun Revocable Trust v. Ansari,* 2000 WI App 83, 234 Wis. 2d 335, 610 N.W.2d 129.

¶ 10. A reviewing court is not bound by an agency's interpretation of a statute. However,

> [c]ourts will give varying degrees of deference to an agency's interpretation of a statute when they have concluded that the legislature charged the agency with the duty of administering the statute; that the agency's interpretation is of longstanding; that the agency's interpretation entails its expertise, technical competence and specialized knowledge; and that through interpretation and application of the statute, the agency can provide uniformity and consistency in the field of its specialized knowledge.

*Matter of Midland Ins. Co.,* 195 Wis. 2d 835, 846, 537 N.W.2d 51 (Ct. App. 1995) (citing *Lisney v. LIRC,* 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992)). In *Midland,* we construed WIS. STAT. § 646.31(6)(a) (1991–92), a section prohibiting recovery from the Fund for indemnified losses. There, we considered whether under § 646.31(6)(a) claimants could recover from the Fund all amounts not actually collected from indemnifiers, or if claimants could only recover those amounts not covered by the policies of the indemnifiers, regardless of

how much the claimant actually collected under those policies. *Midland*, 195 Wis. 2d at 846–847. Having concluded that the Fund did not have prior experience with the specific issue in that case, we applied a de novo review. *Id.*

¶ 11. Likewise, here the Fund acknowledges that this is the first time that it has construed WIS. STAT. § 646.31(2)(a) as authorizing the assessment of reinsurance companies of town mutuals. Therefore, given the Fund's lack of experience with this specific issue, we will review its interpretation of the statute de novo.

### *The Wisconsin Insurance Security Fund*

¶ 12. The Wisconsin Insurance Security Fund was created in 1969 by the legislature to help to pay the claims of insureds when an insurer doing business in Wisconsin becomes insolvent. A purpose of the Fund is "[t]o maintain public confidence in the promises of insurers by providing a mechanism for protecting insureds from excessive delay and loss in the event of liquidation of insurers and by assessing the cost of such protection among insurers." WIS. STAT. § 646.01(2)(a).

¶ 13. The Fund generates revenue by assessing solvent insurers, which are divided by Chapter 646 into five different categories of insurers—life, annuities, disability, health maintenance organization, and "all other kinds of insurance subject to this chapter." The Fund maintains a separate account for each of these five categories. WIS. STAT. § 646.11(2). When an insurance company goes into liquidation, the Fund must assess all solvent insurers in the same account as the insolvent insurer under WIS. STAT. § 646.51(1m). Thus, the Fund is structured such that if a category of

701

policyholders is able to file a claim on the Fund, their insurers are subject to assessment.

¶ 14. When the liquidation of American Eagle commenced, the Fund assessed all solvent insurers in the account reserved for "all other kinds of insurance." The Fund determined that reinsurers of town mutuals were properly included in this account, and it therefore assessed Reinsurance Corp.

### Text of Wis. Stat. § 646.31(2)(a) and related statutes

¶ 15. "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.*, ¶ 46 (citation omitted). Context and statutory structure are important to statutory meaning, and may be ascertained from the statutory text. *Id.*, ¶ 46, ¶ 48. A statute is ambiguous only if it "reasonably gives rise to different meanings," i.e., "if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47. We may not consult extrinsic sources, such as legislative history, to ascertain meaning unless the statute is ambiguous. *Id.*, ¶ 46.

¶ 16. The Fund contends that Wis. Stat. § 646.31(2)(a) provides it with the authority to assess reinsurers of town mutuals. This statute states in relevant part:

702

(2) CLASSES OF CLAIMS TO BE PAID. No claim may be paid under this chapter unless the claim is in one of the following classes:

(a) *Residents.* 1. The claim of a policyholder, including a ceding assessable domestic insurer that is organized under ch. 612 [the town mutual insurance chapter] and a domestic insurer that is a bona fide policyholder of the insurer in liquidation . . . .

The Fund asserts that to "cede" with regard to insurance means to "reinsure," citing *Franklin Mut. Ins. Co. v. Meeme Town Mut. Fire Ins. Co.*, 68 Wis. 2d 179, 181, 228 N.W.2d 165 (1975). In *Franklin Mut. Ins.*, the supreme court adopted a definition of reinsurance from a leading treatise, which stated:

"Reinsurance, to an insurance lawyer, means one thing only—the *ceding* by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the *ceding* company, and in which contract the *ceding* company retains all contact with the original insured, and handles all matters prior to and subsequent to loss."

*Id.* (quoting 13 Appleman, Insurance Law and Practice, Sec. 7681, pp. 433, 434 (emphasis added)).

¶ 17. Therefore, the Fund asserts, "ceding" in WIS. STAT. § 646.31(2)(a) means "reinsuring," and risks that are ceded by insurers organized under Chapter 612 (town mutuals) are covered by the Fund. Under this view, town mutuals stand as "policyholders" in relation to their reinsurers. Because town mutuals may make claims under WIS. STAT. § 646.31(2)(a), the Fund must assess the solvent reinsurers of town mutuals whenever an insurance company in the reinsurers' account category goes into liquidation.

¶ 18. Reinsurance Corp. characterizes "ceding," as well as "assessable" and "domestic," as merely descriptive of an "insurer organized under ch. 612." Reinsurance Corp. notes that town mutuals must cede certain risks under Wis. Stat. § 612.33(2), and Wis. Admin. Code § Ins 13.09(4)(a)[6] requires town mutuals to cede all risks for which § 612.33(2) does not require reinsurance. However, as the Fund asserted at oral argument, neither Chapter 612 nor the administrative code require reinsurance for the entire amounts of these risks.

¶ 19. We conclude that the Fund's interpretation of Wis. Stat. § 646.31(2)(a) is reasonable. Its interpretation of "ceding" is consistent with a cardinal rule of statutory interpretation; it "giv[es] reasonable effect to every word [of the statute], in order to avoid surplusage." *Kalal*, 271 Wis. 2d 633, ¶ 46. Reinsurance Corp.'s interpretation diminishes the effect of the word "ceding" by treating it as an unnecessary modifier of "an insurer . . . organized under ch. 612."

¶ 20. However, Reinsurance Corp. offers its own interpretation of Wis. Stat. § 646.31(2)(a) that we conclude is also reasonable. First, Reinsurance Corp. contends that the purpose of Wis. Stat. § 646.31(2)(a) was to close a loophole that would have otherwise prevented town mutuals from recovering as policyholders on insurance plans covering damage to the mutuals' property

---

[6] Wisconsin Admin. Code § Ins 13.09(4)(a) provides:

*Aggregate excess of loss reinsurance.* Every town mutual shall obtain and continuously maintain unlimited aggregate excess of loss reinsurance for all risks covered by property and nonproperty insurance that is not otherwise ceded under another reinsurance contract. The aggregate excess of loss reinsurance shall provide a maximum attachment point expressed as a percentage of net premiums written, which is based on the relationship of the town mutual's prior year-end surplus to prior year-end gross premiums written . . . .

and personal injury claims for accidents on that property. WISCONSIN STAT. § 646.01(1)(a)2.b. provides that Chapter 646 does not apply to "[a]ssessable mutuals, including town mutuals." Reinsurance Corp. argues that this provision would have prevented a town mutual from filing a claim for damage to the mutual's property if its insurer went into liquidation. Reinsurance Corp. asserts that § 646.31(2)(a) closes this loophole, permitting a town mutual to make a liability or property damage claim as a policyholder on the Fund.

¶ 21. Second, Reinsurance Corp. observes that reinsurance is excluded from regulation by the Fund by WIS. STAT. § 600.01(1)(b)1., which states: "Unless otherwise expressly provided, chs. 600 to 646 do not apply to . . . reinsurance." Reinsurance Corp. contends that the use of "ceding" in WIS. STAT. § 646.31(2)(a) is not a specific, express reference to reinsurance necessary to overcome the exclusion of reinsurance from Chapter 646. The Fund counters that because the meaning of "ceding" in the insurance context is well established, its use in § 646.31(2)(a) is an express exception to § 600.01(1)(b)1.

¶ 22. Third, Reinsurance Corp. contends that the legislature limited the scope of the Fund's authority to "direct insurance" in WIS. STAT. § 646.01(1)(a):

**646.01 Scope and purpose.**

(1) Scope.

(a) *General.* This chapter applies to:

1. All kinds and lines of direct insurance . . . .

Direct insurance is not defined by statute or Wisconsin case law. Reinsurance Corp. observes that courts from other jurisdictions have defined direct insurance to the

705

exclusion of reinsurance. *See Arizona Life & Disability Ins. Guaranty Fund v. Honeywell, Inc.*, 945 P.2d 805, 816 (Ariz. 1997) ("We agree that the legislature inserted the term 'direct' to bar coverage for reinsurance contracts."); *Iowa Contractor's Workers Compensation Group v. Iowa Insurance Guaranty Association*, 437 N.W.2d 909, 913–14 (Iowa 1989). It also notes that the original WIS. STAT. § 646.01(1)(a) (1969–70),[7] like the present version, did not specifically address reinsurance, but the committee comments to the law state that "[t]he exception for reinsurance recognizes that reinsurers are peculiarly able to protect themselves." Committee comment, Laws of 1969, ch. 144, § 26. The committee's conclusion that this section excluded reinsurance from Chapter 646 apparently followed from an interpretation of the phrase "all kinds and lines of direct insurance," supporting Reinsurance Corp.'s view that "direct insurance" here excludes reinsurance.[8]

---

[7] WISCONSIN STAT. § 646.01(1)(a) (1969–70) provided:

**(1) Scope.** This chapter applies to:

(a) All kinds and lines of direct insurance, except variable annuities and variable value life insurance contracts.

(b) All insurers authorized to do business in this state except:

1. Fraternals.

2. Assessable mutuals, including town mutuals.

3. Issuers of gift annuities under ch. 615.

4. Service insurance corporations under ch. 613.

5. State insurance funds.

6. Municipal mutuals under s. 611.23.

7. Insurers and motor clubs under ch. 616.

[8] The Fund counters that the essential quality of "direct insurance" is that it is "uninterrupted by the presence of

¶ 23. Fourth, Reinsurance Corp. notes that the assessment statute, Wis. Stat. § 646.51(3)(a) (1999–2000),[9] provides for assessment based on a percentage of premiums received for "direct insurance," and refers to "direct business" and "insurers":

> (3) Calculation. (a) *General.* 1. In this section, "premiums" means gross premiums and other considerations received for direct insurance and annuities, including considerations for a plan established under ss. 185.981 to 185.985, less return premiums and other considerations, dividends and experience credits paid or credited to policyholders on the direct business. The term "premiums" does not include any amounts received for any contracts or for the portions of any contracts for which coverage is excluded under s. 646.01(1)(b).
>
> . . . assessments shall be calculated as a percentage

another insurer." *Iowa Contractor's Workers Compensation Group,* 437 N.W.2d 909, 913–14 (Iowa 1989). It concludes that because no other insurer stands between a town mutual and its reinsurer, the relationship is direct. For the purposes of this opinion, we need not precisely define "direct insurance" as it is used in Wis. Stat. § 646.01(1)(a)1. We note only that Reinsurance Corp.'s proposed definition is reasonable and contributes to the reasonableness of Reinsurance Corp.'s contention that Wis. Stat. § 646.31(2)(a) does not authorize the assessment of reinsurers of town mutuals. Moreover, even if we were to adopt Reinsurance Corp.'s definition of "direct insurance" this would not affect our conclusion that the Fund's interpretation of § 646.31(2)(a) is also reasonable, and that the statute is therefore ambiguous.

[9] We consider the version of Wis. Stat. § 646.51 in effect at the time of the assessment. Portions of § 646.51 have since been renumbered by 2003 Wisconsin Act 261. The provisions of § 646.51(3)(a) (1999–2000) relevant to this discussion remain unchanged and are now contained in §§ 646.51(1c)(c) and 646.51(3)(am) (2003–04).

of premiums written in this state by each insurer in the classes protected by the account, for the year preceding the year of entry of the order of liquidation.

¶ 24. Finally, Reinsurance Corp. adds that the assessment statute does not provide a method of calculating assessments of reinsurance companies, only assessments of "insurers" based on a percentage of annual premiums written in the state.[10] Reinsurance Corp. contends that because WIS. STAT. § 646.31(2)(a) states that a claim must be made by a "policyholder of the *insurer* in liquidation," and not (in Reinsurance Corp.'s words) "a contract holder of a reinsurer in liquidation," the statute does not apply to reinsurers.

¶ 25. Together, these arguments lead to a reasonable conclusion that WIS. STAT. § 646.31(2) does not authorize the assessment of a reinsurance company of a town mutual. Because Reinsurance Corp. and the Fund each offer reasonable interpretations of WIS. STAT. § 646.31(2)(a), the statute is ambiguous. We therefore turn now to extrinsic sources to ascertain the statute's meaning.

---

[10] Reinsurance Corp. also argues that because the assessment statute does not use the term "ceding" or "reinsuring" the legislature did not authorize the Fund to assess reinsurers. On this point, we disagree. To determine which insurers to assess, the Fund first determines which insureds may file claims on the Fund under the claim statute, WIS. STAT. § 646.31. The Fund then assesses all insurers of the same category as those who were insurers to those insureds eligible to file claims under WIS. STAT. § 646.51(1) (2001–02) (renumbered § 646.51(1m) (2003–04)). Therefore, the fact that the assessment statute does not reference reinsurers of town mutuals is not surprising, because the categories of insurers to be assessed are determined by the claim statute and not the assessment statute.

¶ 26. WISCONSIN STAT. § 646.31 was created by the legislature in 1979 as a part of a package of revisions to Chapter 646 and Chapter 645, the insurance liquidation statute. Laws of 1979, ch. 109, sec. 14. A preliminary note to the legislation explains that the law's purpose was to remedy

> clear defects in [Chapter 646].... [The chapter] was enacted in the absence of experience in the working of such [insurance security] funds.... It is time, now, to begin to develop a statute based on the fairly extensive experience of the past few years ... with careful reflection on the problems to be dealt with, in contemporary context.

¶ 27. As a part of this revision, WIS. STAT. § 646.31 established conditions of eligibility for claimants and classes of claims to be paid. The former § 646.31(2)(a) (1981–82) provided the following:

> (2) CLASSES OF CLAIMS TO BE PAID. No claim may be paid under this chapter unless the claim is in one of the following classes:

> (a) *Residents.* The claim of a policyholder, including a ceding domestic insurer which is not subject to this chapter, or an insured under a policy or annuity who at the time of the insured event or of the liquidation order was a resident of this state ....

A brief comment to § 646.31(2) explains that "[p]aragraph (a) is extended to include some ceding insurers such as a town or municipal mutual reinsuring with a commercial insurer." Laws of 1979, ch. 109, sec 14.

¶ 28. Wisconsin Act 325 (1987) also significantly revised Chapter 646. It modified the "residents" class of claimants in WIS. STAT. § 646.31(2)(a) to include "[t]he

709

claim of a policyholder, including a ceding *assessable* domestic insurer which is *organized under ch. 612 and a domestic insurer which is a bona fide policyholder of the insurer in liquidation . . . .*" 1987 Wis. Act 325, sec. 15. (statutory additions emphasized). The Legislative Reference Bureau (LRB) analysis to the bill signed into law as 1987 Wis. Act 325 explains that this language "[c]larifies the right of town mutuals to recover as policyholders under certain reinsurance arrangements." LRB analysis, 1987 SB 214. The relevant language of § 646.31(2)(a) has remained unchanged since the 1988 revision.

¶ 29. The Fund contends that the 1979 comment and 1987 LRB analysis clarify that under Wis. Stat. § 646.31(2)(a) a town mutual ceding certain risks with a reinsurer may make a claim with the Fund for these risks if the reinsurer goes into liquidation. We agree. The 1979 comment explains that § 646.31(2)(a) "include[s] some ceding insurers such as a town . . . mutual reinsuring with a commercial insurer." This comment clarifies that "ceding" is synonymous with "reinsuring," and that the purpose of "ceding" is not merely descriptive. Rather, it defines a type of insurance relationship out of which a claim on the Fund by a town mutual may arise.

¶ 30. The 1987 LRB analysis provides additional evidence of legislative intent. It explains that the 1987 amendments "[c]larify" that a purpose of Wis. Stat. § 646.31(2)(a) from its inception was to permit town mutuals "to recover as policyholders *under certain reinsurance relationships.*" LRB analysis, 1987 SB 214 (emphasis added).[11] Reinsurance Corp. counters that

[11] An LRB note to a 2003 change to Wis. Stat. § 646.31(2)(a) also confirms this purpose. LRB analysis, 2003 Wisconsin Act

710

this analysis expresses legislative intent "to allow town mutuals, as <u>policyholders</u>, to make claims against the Fund if the <u>insurer</u> of a town mutual goes into liquidation, not as a party to a reinsurance contract." Reinsurance Corp. insists that a party to a reinsurance contract cannot be a policyholder, but rather is a party to a reinsurance contract, and therefore the analysis must refer to insurers of town mutuals and not to reinsurers. However, this view does not account for the legislative history's reference to "certain reinsurance relationships."

¶ 31. We therefore determine that the legislative history to Wis. Stat. § 646.31(2)(a) demonstrates that the legislature intended to permit town mutuals to recover as policyholders of their reinsurers under § 646.31(2)(a). Accordingly, under the assessment scheme of Chapter 646, we conclude that the Fund has the authority to assess reinsurance companies of town mutuals—an authority it must exercise to ensure the Fund's solvency. *See generally* Wis. Stat. § 646.51.

261. As discussed in footnote 2 *supra,* this change did not affect the substance of the provision. Because this version of the statute was not in effect at the time of the assessment, the legislative history accompanying this change has no bearing on our analysis of § 646.31(2)(a) (2001–02). However, we observe the 2003 LRB analysis confirms our interpretation of the statute by stating that the change "clarifies" the statute's existing purpose to permit town mutuals to file claims on the Fund relating to reinsurance. The analysis provides: "the bill clarifies that, although reinsurance is generally not covered under the fund, reinsurance ceded by an assessable town mutual . . . [is] covered." *Id.*

## Additional Reinsurance Corp.
## arguments against assessment

¶ 32. Reinsurance Corp. also contends that: (1) WIS. STAT. § 646.31(1)(b) exempts town mutuals from assessment under § 646.31; (2) assessment of town mutual reinsurers amounts to assessment of town mutuals, which is prohibited by WIS. STAT. § 646.01(1)(a)2.b.; and (3) the Fund's assessment is contrary to Article I, Section 10 of the U.S. Constitution. We consider these arguments in turn, and reject each for the reasons discussed below.

¶ 33. WISCONSIN STAT. § 646.31(1)(b) provides:

> **Eligible claims. (1)** CONDITIONS OF ELIGIBILITY. A claim is not eligible for payment from the fund unless it is an unpaid claim for a loss insured under the policy or annuity and all of the following conditions are met:
>
> . . . .
>
> (b) *Assessability of insurer.* The claim arises out of business not exempt from assessment under s. 646.01(1).

As discussed *supra*, § 646.01(1) exempts various categories of insurance from the chapter, including town mutuals. Section 646.01(1)(a)2.b. Reinsurance Corp. contends that any claim on the Fund by a town mutual resulting from the liquidation of Reinsurance Corp. will "arise out of the business" of town mutuals because the amounts sought by a town mutual from Reinsurance Corp. result from claims made on the town mutual by its individual policyholders. We find this argument unpersuasive. WISCONSIN STAT. § 646.31(2)(a) authorizes the assessment of reinsurers of town mutuals, not town

mutuals themselves. The "business" of a town mutual is to provide insurance coverage to group members, not to file claims with the mutual's reinsurer. Therefore, the claim in this case would not directly "arise out of business not exempt" from assessment.

¶ 34. Reinsurance Corp. next contends that assessment of a town mutual's reinsurer is tantamount to the assessment of a town mutual, which is prohibited. *See above,* WIS. STAT. §§ 646.01(1)(a)2.b. and 646.31(1)(b). Reinsurance Corp. asserts that because it is a mutual company and eighty percent of its members are town mutuals, these members will shoulder most of the Fund's assessment. We reject this as a basis on which to prohibit assessment of town mutual reinsurers. Reinsurance Corp.'s ownership structure is irrelevant to whether the Fund has the statutory authority to assess Reinsurance Corp. and other reinsurers of town mutuals. And what percentage ownership of a reinsurance company by a town mutual would make assessment of a reinsurer a *de facto* assessment of a town mutual? Seventy-five percent? Sixty percent? Would the Fund be required to inquire as to the present ownership of a reinsurance company before making an assessment? Reinsurance Corp. does not address these questions.

¶ 35. Finally, Reinsurance Corp. argues that the Fund's assessment is contrary to the contracts clause of the U.S. Constitution, which prohibits states from "pass[ing] any . . . law impairing the obligation of contracts . . . ." U.S. Const. Art. I, Sec. 10. Reinsurance Corp.'s contracts with town mutuals provide that Reinsurance Corp. "shall not be subject to any . . . liability for assessment" and is not liable for any assessment by

713

an "insolvency fund." Reinsurance Corp. asserts that the Fund's assessment unconstitutionally interferes with these contract provisions. This argument also fails.

¶ 36. To demonstrate impairment of contract, a plaintiff must show that a change in the law after the contract was formed impaired the contract, harming the plaintiff in a substantial manner. *See Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411, 103 S. Ct. 697 (1983). Because the contracts clause protects against impairment caused by legislative action and not executive or judicial action, *see New Orleans Water-Works Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 30, 8 S. Ct. 741 (1888), *Barrows v. Jackson*, 346 U.S. 249, 260, 73 S. Ct. 1031 (1953), passage of WIS. STAT. § 646.31(2)(a) in 1979 and not the Fund's recent interpretation of the statute is the event that triggers the contract cause. Reinsurance Corp. offers no evidence that its contracts with the town mutuals were entered into before 1979.

¶ 37. Even if some of these contracts were entered into before 1979, their terms may not interfere with the power of the state to impose regulations that promote the public good. "[T]he interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it . . . for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241, 98 S. Ct. 2716 (1978) (citation omitted). The benefits to the general public of protecting town mutuals, and consequently their policyholders, from reinsurer insolvency are obvious, and outweigh the potential costs to the contracting parties.

714

## PROCEDURAL OBJECTIONS

¶ 38. To address the procedural objections Reinsurance Corp. raises, we must first set out the procedural history of the case in greater detail. Upon filing its administrative appeal challenging the assessment, Reinsurance Corp. requested that the Fund appoint an independent examiner, permit discovery and hold a public hearing, all of which Reinsurance Corp. asserted it was entitled to receive under Chapter 227. It also moved the Fund to preclude participation in the appeal by an attorney with the firm of LaFollette, Godfrey & Kahn (LGK) who had been retained by Reinsurance Corp., and had also been retained by the Fund in the American Eagle assessments.

¶ 39. By a letter dated December 11, 2001, the Fund responded to Reinsurance Corp.'s appeal, explaining that: (1) the Fund was not a state agency subject to the requirements of Chapter 227; (2) its assessment appeal procedures were set forth in Chapter 646, and that such proceedings were timely and fair; (3) the Fund had no plans to appoint an outside examiner or hold a hearing because the appeal only raised issues of law; (4) it would attempt to respond to requests for information sought by Reinsurance Corp.; and (5) the Fund had ceased all communication with the LGK attorney. The Fund requested that Reinsurance Corp. submit a brief setting forth its legal position, and assured Reinsurance Corp. that it would conduct its proceedings in a fair and equitable manner.

¶ 40. On December 18, 2001, Reinsurance Corp. filed an action, the procedures case, seeking a judgment declaring it entitled to a process governed by Chapter 227, the appointment of an impartial examiner to decide the administrative appeal, discovery and a hear-

ing. The circuit court stayed the proceedings without prejudice to permit the Fund to decide the case on the merits. The stay ordered:

[T]he above litigation will be stayed. The Plaintiff shall file a brief in support of its appeal, and notify the Court when the brief has been filed with the Defendant. Defendant will respond to any brief that Plaintiff files in support of its appeal within thirty (30) days, which response will decide the merits of the appeal.

¶ 41. Reinsurance Corp. filed the requested brief, which raised certain factual questions not previously asserted. These included the potential impact of the assessment on the finances of town mutuals, and whether there was evidence that town mutuals needed Fund coverage. Consequently, the Fund scheduled a hearing to make factual findings and appointed a hearing examiner, Kurt Forney. Reinsurance Corp. objected by letter to the Fund that the hearing would violate the stay, but said nothing to the court about the matter. The Fund held the hearing in June 2002, approved Forney's recommended findings of fact, and determined that Reinsurance Corp. was subject to assessment. Reinsurance Corp. did not attend the hearing.

¶ 42. Reinsurance Corp. then filed a motion to "strike" the Fund's decision and to "declare [Reinsurance Corp.'s procedural] rights." The circuit court denied the motion, concluding: "I deny the plaintiff's motion to enforce any rights, [b]ecause I don't see that there have been rights violated. Quite the opposite."

¶ 43. As already explained, Reinsurance Corp. initiated a second action, the merits case, in circuit court challenging the Fund's decision. The procedures case and the merits case were then consolidated before the

liquidation court. In the procedures case, Reinsurance Corp. filed a motion to "remand or take testimony," claiming that: (1) the Fund's hearing violated the circuit court's stay; (2) the hearing examiner was biased; (3) the Fund withheld information about its rules of procedure, and restating its earlier procedural objections. The court denied Reinsurance Corp.'s motion and granted the Fund's motion for summary judgment on the procedures case. Because whether the procedures afforded to Reinsurance Corp. provided Reinsurance Corp. with a fair opportunity to make its case is a question of law, we apply a de novo standard of review regarding Reinsurance Corp.'s procedural complaints. *See Tateoka v. City of Waukesha Bd. of Zoning Appeals,* 220 Wis. 2d 656, 668–69, 583 N.W.2d 871 (Ct. App. 1998).

¶ 44. "The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Bunker v. Labor and Industry Review Comm'n,* 2002 WI App 216, ¶ 19, 257 Wis. 2d 255, 650 N.W.2d 864 (citations omitted). We conclude that the Fund's procedures met this requirement. Additionally, each of Reinsurance Corp.'s specific procedural complaints has either been waived, lacks merit, or fails because Reinsurance Corp. has not shown how the alleged error prejudiced its case.

¶ 45. In the administrative proceeding, the Fund provided Reinsurance Corp. with the following: a detailed response to Reinsurance Corp.'s administrative appeal outlining the Fund's procedures; a chance to present Reinsurance Corp.'s legal position in a summary judgment-style brief; an offer to respond to Reinsurance Corp.'s requests for information; appointment

of an outside hearing examiner; and a public hearing. These procedures provided Reinsurance Corp. with a fair opportunity to make its case. *See Capoun Revocable Trust v. Ansari*, 2000 WI App 83, ¶ 17, 234 Wis. 2d 335, 610 N.W.2d 129 ("Due process is flexible and requires only such procedural protections as the particular situation demands.") (citations omitted).

¶ 46. As to Reinsurance Corp.'s specific procedural objections, we conclude that by failing to attend the hearing before the Fund, Reinsurance Corp. waived its right to complain that the examiner was biased,[12] or that the hearing violated the stay. A hearing before the Fund was one of the remedies Reinsurance Corp. requested in its motion for declaratory judgment. Regardless, if Reinsurance Corp. objected to *this* hearing and believed it to be a violation of the court's stay, Reinsurance Corp. should have asked the circuit court to rule on the hearing's propriety beforehand and/or attended while reserving its objections. What is clear to us is that it cannot now challenge the fairness of a hearing in which it did not participate. *See Herlache v. Blackhawk*

---

[12] Though we conclude that Reinsurance Corp. waived its right to challenge the impartiality of the hearing examiner, we note also that Reinsurance Corp.'s argument on the merits is weak. Reinsurance Corp. argues that Kent Forney cannot be an impartial examiner in this case because he has served as the executive director of the Iowa Insurance Guaranty Fund, Iowa's counterpart to the Wisconsin Insurance Security Fund. Under Chapter 227, which Reinsurance Corp. contends applies to the Fund, an agency may appoint an official or employee *of the agency* to conduct the hearing. WIS. STAT. § 227.46(1). If a Fund employee may by statute serve as an examiner, Forney's affiliation with a security fund in another state cannot be a basis for disqualification.

*Collision Repair, Inc.*, 215 Wis. 2d 99, 102, 572 N.W.2d 121 (Ct. App. 1997) ("A litigant who fails to attend a hearing cannot be heard to complain about the [tribunal's] order that results from that hearing."). Moreover, by not taking advantage of the Fund's offers to provide Reinsurance Corp. information, Reinsurance Corp. also waived its discovery complaint.[13]

¶ 47. Reinsurance Corp.'s allegation that the Fund improperly withheld information about its procedures lacks merit. In its December 11, 2001 letter, the Fund explained the procedure it would apply in the appeal. After the administrative process resumed following the circuit court's stay, the Fund provided Reinsurance Corp. with a copy of its rules. Thus, we conclude that the information the Fund provided Reinsurance Corp. regarding its procedures was timely and sufficient to meet the requirements of due process. *See State v. Hays*, 173 Wis. 2d 439, 446, 496 N.W.2d 645 (Ct. App. 1992).

¶ 48. Finally, we conclude that the alleged conflict of interest involving the law firm of LaFollette, Godfrey and Kahn, S.C. (LGK) does not warrant reversal of the Fund's decision or a remand for further proceedings. We do not take such allegations lightly. *See Gieseke v. State Dept. of Transp., Div. of Highways*, 145 Wis. 2d 206, 209, 426 N.W.2d 79 (Ct. App. 1988) ("A . . . court must intervene where the professional misconduct of an attorney affects the substantial rights of the parties."). But here, both the Fund and LGK recognized a potential conflict prior to the litigation. Reinsurance Corp.

---

[13] For example, Reinsurance Corp. failed to respond to the Fund's invitation to identify what additional information it was seeking in a June 3, 2002 letter.

719

does not dispute that LGK ceased to represent the Fund after LGK perceived this conflict. Reinsurance Corp. also does not explain how it may have been prejudiced by LGK's representation of the Fund. *See R.U.R.A.L. v. Public Service Commission*, 2000 WI 129, ¶¶ 47–48, 239 Wis. 2d 660, 619 N.W.2d 888 (a party challenging an agency decision must prove not only that the agency erred, but that the error impaired the fairness of the proceedings or the correctness of the action).

¶ 49. Because we conclude that all of Reinsurance Corp.'s specific complaints were either waived or lack merit, we need not address the issue of whether the Fund is a state agency subject to the requirements of Chapter 227. *See State v. Robertson,* 2003 WI App 84, ¶ 32, 263 Wis. 2d 349, 661 N.W.2d 105 ("Courts act only to determine actual controversies—not to announce principles of law or to render purely advisory opinions.").

*By the Court.*—Judgment affirmed.