U.S. OIL COMPANY, INC., Plaintiff-Appellant,

v.

MIDWEST AUTO CARE SERVICES, INC.,
Defendant,

Guy THEUNE, Scott Haag, Phil Wisniewski, and
Michael Hughes, Defendants-Respondents.

Court of Appeals

*No. 88–1254. Submitted on briefs January 3, 1989.—Decided
April 4, 1989.*

(Also reported in 440 N.W.2d 825.)

For the plaintiff-appellant the cause was submitted on the briefs of *Kasdorf, Lewis & Sweitlik* by *Jeffrey A. Schmeckpeper* and *Charles G. Maris,* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Foley & Lardner* by *Brian W. McGrath,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. U.S. Oil Company, Inc. (U.S. Oil) appeals from a judgment dismissing its complaint against Guy Theune (Theune), Scott Haag, Phil Wisniewski and Michael Hughes (collectively, shareholders). This case involves efforts by U.S. Oil to collect a debt owed by a corporation. We conclude that the trial court properly granted judgment to the shareholders on U.S. Oil's claims for negligent misrepresentation and strict responsibility for misrepresentation. We conclude, however, that the statute of frauds cannot be invoked to bar a claim based on promissory estoppel. Furthermore, summary judgment is inappropriate because material issues of fact exist concerning the promissory estoppel claim.

U.S. Oil supplied tires, batteries, and accessories manufactured by Uniroyal Tire Company (Uniroyal) to Midwest Auto Care Services, Inc. (Auto Care) for retail sale. The shareholders, owners of all of Auto Care's stock, were anxious to obtain inventory as soon as possible after forming the company in order to take advantage of seasonal selling patterns. U.S. Oil alleges that it was induced to sell products to Auto Care on an open account by the promises of Auto Care and the shareholders that Auto Care would participate in Uniroyal's dealer program and finance its inventory through Uniroyal's book balance program. Under that arrangement, Uniroyal would pay the outstanding account with U.S. Oil after

Uniroyal approved Auto Care's participation in the dealership program. According to Theune, an application was submitted to Uniroyal, but Uniroyal never responded.

To participate in the dealership program, Auto Care was required to obtain a letter of credit issued by a bank for the benefit of Uniroyal. The shareholders agreed to execute any personal guarantees required by the issuing bank as security for the letter of credit. Auto Care never applied for the letter of credit, although the reason for its delay and subsequent failure is at issue.

Approximately ten months after U.S. Oil began selling products to Auto Care, the shareholders proposed an alternative credit program. The letter proposal was written by Theune. It acknowledged that the shareholders had originally agreed to provide personal guarantees for a letter of credit, but indicated that their thinking had changed, in part, because other suppliers would not require them to have personal liability for Auto Care's corporate debts.

U.S. Oil alleges that Auto Care owes it over $45,000. It filed suit against Auto Care and the shareholders to recover that amount. The complaint alleges claims against the shareholders for negligent misrepresentation, strict responsibility for misrepresentation, and promissory estoppel. The trial court, in granting the shareholders' motion for summary judgment, concluded that the statute of frauds barred U.S. Oil's claims.

## STANDARD OF REVIEW

The purpose of summary judgment is to determine whether a legal dispute can be resolved without trial.[1] Appellate courts are required to follow the same methodology as the trial court in reviewing motions for summary judgment.[2] The court first examines the pleadings to determine whether a proper claim for relief has been stated.[3] If the complaint states a claim and the answer joins the issue, the inquiry then turns to whether any issues of material fact exist.[4] Summary judgment must be entered if the pleadings, depositions, answers to interrogatories, and admissions on file and affidavits, if any, show that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law.[5] Here, the complaint states claims for negligent misrepresentation, strict responsibility for misrepresentation, and promissory estoppel and the answer joins the issue.

## MISREPRESENTATION CLAIMS

To recover on its misrepresentation claims, U.S. Oil must prove that the defendant made a representation of fact and that the representation was false.[6] The theory underlying U.S. Oil's misrepresentation claims is that

---

[1] *Bulgrin v. Madison Gas & Elec. Co.,* 125 Wis. 2d 405, 407, 373 N.W.2d 47, 49 (Ct. App. 1985).

[2] *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

[3] *Id.*

[4] *Id.*

[5] Sec. 802.08(2), Stats.

[6] *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 25, 288 N.W.2d 95, 99 (1980).

the shareholders' promise to execute guarantees was an actionable representation.

█

The shareholders correctly argue that unfulfilled promises or representations of things to be done in the future are not statements of fact. Statements of fact must relate to present or preexisting facts, not something to occur in the future.[7] An exception to the "preexisting fact" rule exists, however, where the promisor, at the time the promise was made, had a present intention not to perform.[8] The promise itself is an implied representation of present intent to perform, and the misstatement of present intention is a misrepresentation of a material fact.[9]

The materials submitted in support of U.S. Oil's motion for summary judgment do not contain any allegations that the shareholders never intended to fulfill their promise. David A. Pennings, a U.S. Oil employee, only states in his affidavit that the promises regarding the dealership program, including the promise to execute guarantees, were made in June 1986, that there were subsequent assurances that the promises would be kept, and that U.S. Oil was advised in April 1987 that the promises would not be kept. A copy of the Theune letter was attached to the affidavit. In the letter, Theune stated that the shareholders' thinking had changed concerning the personal guarantees.

U.S. Oil also submitted an affidavit incorporating testimony from Theune's deposition. The questions do not seek to establish that the shareholders never

---

[7] *Hartwig v. Bitter,* 29 Wis. 2d 653, 656, 139 N.W.2d 644, 646 (1966).

[8] *Id.* at 658, 139 N.W.2d at 647.

[9] *Prosser and Keeton on the Law of Torts* sec. 109, at 762–63 (5th ed. 1984).

intended to fulfill their promise to execute personal guarantees, and Theune's answers do not suggest that inference. Rather, Theune testified that although some proposals were rejected because they were unacceptable to the shareholders, the dealership program, letter of credit, and personal guarantees were originally acceptable. Theune was asked whether during the time that U.S. Oil supplied inventory, U.S. Oil was ever told that the shareholders "had decided not to follow through with [their] agreement," and he acknowledged that it had not been told. Theune was also asked the following two questions:

> [I]n fact, isn't what happened that the shareholders found that they could obtain terms from a tire supplier which did not require them to have a personal exposure for the debt?
>
> . . ..
>
> Isn't that the reason the shareholders decided not to live up to the agreement that had been entered into in June of 1986?

Theune admitted that the shareholders had investigated other sources around April 1986, although he denied that that was the reason for their refusing to provide the letter of credit.

U.S. Oil failed to submit evidentiary facts alleging that the shareholders did not intend to execute the personal guarantees at the time they promised to do so, thus there was no representation of such a fact. Consequently, dismissal of the complaint as to the two misrepresentation claims was proper. We need not decide whether the statute of frauds bars the claims as the trial court held. This court may sustain a trial court's holding even if the theory or reasoning relied upon is different from the trial

court's.[10] Because U.S. Oil failed to show the necessary linkage between the misrepresentation claims and the shareholders' intent at the time they promised to sign guarantees, the trial court did not err when it dismissed the claims.

## PROMISSORY ESTOPPEL

U.S. Oil's complaint also includes a claim denominated as promissory estoppel. Promissory estoppel was specifically recognized as a cause of action in *Hoffman v. Red Owl Stores, Inc.*[11] The *Hoffman* court described promissory estoppel as " 'an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings.' "[12]

To enforce a promise under the theory of promissory estoppel, a plaintiff must prove that the promise was one that the promisor should reasonably have expected to induce either action or forbearance of a definite and substantial character by the plaintiff and that the promise did induce either action or forbearance.[13] In addition, the plaintiff must prove that enforcement of the promise is necessary to avoid an injustice.[14] The first two elements are questions for the fact finder. The third is a policy question to be decided by the court in the exercise of its discretion.[15]

---

[10] *See State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

[11] 26 Wis. 2d 683, 696, 133 N.W.2d 267, 274 (1965).

[12] *Id.* at 695, 133 N.W.2d at 273 (quoting *Peoples Nat'l Bank v. Linebarger Constr. Co.,* 219 Ark. 11, 240 S.W.2d 12 [1951]).

[13] *Id.* at 698, 133 N.W.2d at 275.

[14] *Id.*

[15] *Id.*

The shareholders sought summary judgment solely on the basis that the statute of frauds was an absolute bar to recovery. They contend that the alleged promise to execute personal guarantees was a promise to be responsible for the debt of another. A special promise to answer for the debts of a third party is void unless in writing and subscribed by the person to be charged.[16] Consequently, the shareholders contend that U.S. Oil's claim was barred by the statute of frauds.

Wisconsin courts have long recognized a rule that equity may bar a defendant from invoking the statute of frauds. Equity will interfere to give one immunity from the consequences of the statute of frauds when the failure to interfere would be a fraud on the other party to the transaction.[17] The statute of frauds was intended to prevent fraud and perjury, not to give one party or another a technical escape from a fair and definite agreement.[18] When the elements of equitable estoppel are met, the equities of the situation take the transaction out of the statute of frauds, and the contract is enforceable according to its terms.[19] Equity supports a similar conclusion when the statute of frauds is raised as a defense to a claim of promissory estoppel.[20]

---

[16] Sec. 241.02(1)(b), Stats.

[17] *Rowell v. Smith,* 123 Wis. 510, 531–32, 102 N.W. 1, 8–9 (1905).

[18] *Kenner v. Edwards Realty & Fin. Co.,* 204 Wis. 575, 586, 236 N.W. 597, 601 (1931).

[19] *See Bratt v. Peterson,* 31 Wis. 2d 447, 454, 143 N.W.2d 538, 541 (1966).

[20] With respect to real property interests only, the doctrine of part performance and equitable estoppel are codified in sec. 706.04, Stats. Although many of the equitable estoppel cases aris-

██ Two eviction cases, *Clark Oil & Refining Corp. v. Leistikow,*[21] and *Rossow Oil Co. v. Heiman,*[22] present the conflict between promissory estoppel and the statute of frauds. In each case, tenants raised promissory estoppel as a defense to an eviction action, and the landlord sought to negate the defense with the statute of frauds. In *Clark Oil,* the court recognized that the doctrine of equitable estoppel did not violate the statute of frauds and stated that promissory estoppel should be treated the same way.[23] In *Rossow Oil,* the court tacitly accepted the premise that the statute of frauds is not a defense to promissory estoppel. The court reviewed the sufficiency of the evidence supporting the claim for promissory estoppel after first stating that the alleged promise to lease was unenforceable as a contract.[24] Consequently, we conclude that the statute of frauds cannot be used to bar a claim for promissory estoppel.

This conclusion does not allow promissory estoppel to be used to "end run" the statute of frauds, nor are we annulling the statute. A plaintiff must prove the elements of promissory estoppel. Furthermore, promissory estoppel is intended to enforce promises only where the failure to do so is unjust. *Restatement (Second) of Contracts* sec. 139 identifies matters that should be consid-

---

ing prior to enactment of sec. 706.04 involved conveyances or leases of real estate, they should not be read to suggest that a different analysis would be appropriate for other types of contracts. Additionally, not all of the cases involved real estate. *See, e.g., Wamser v. Bamberger,* 101 Wis. 2d 637, 305 N.W.2d 158 (Ct. App. 1981) (sale of a security).

[21] 69 Wis. 2d 226, 230 N.W.2d 736 (1975).

[22] 72 Wis. 2d 696, 242 N.W.2d 176 (1976).

[23] *Clark Oil,* 69 Wis. 2d at 237, 320 N.W.2d at 743.

[24] *Rossow Oil,* 72 Wis. 2d at 709–11, 242 N.W.2d at 183–84.

ered in the decision on whether an injustice can only be avoided by enforcement of the promise. Those considerations are:

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
> (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
> (d) the reasonableness of the action or forbearance;
> (e) the extent to which the action or forbearance was foreseeable by the promisor.[25]

Before the trial court can conclude that U.S. Oil should be entitled to enforce the promise to avoid an injustice, the court must weigh the equities in the case. In addition, the court should consider the competing policies of promissory estoppel and the statute of frauds as applied to the facts of the case.[26]

■■■
The facts of the case at this stage of the proceedings are not sufficiently developed to allow this court to weigh the equities and determine if enforcement of the promise is necessary to prevent an injustice. U.S. Oil acted on

---

[25] *Restatement (Second) of Contracts* sec. 139(2) (1981).

[26] Furthermore, a claim for promissory estoppel is not a breach of contract action, and enforcement of the promise does not mean that the plaintiff is entitled to recover lost profits. The trial court can only award damages that in its opinion are necessary to prevent an injustice by compensating the plaintiff for its change of condition. *See Hoffman,* 26 Wis. 2d at 701-02, 133 N.W.2d at 276-77.

Auto Care's promise to participate in Uniroyal's dealership program. The shareholders' alleged promise was a subsidiary one. The material issue unaddressed by the summary judgment materials was whether the shareholders' refusal to execute the guarantee was the sole reason that Uniroyal did not approve Auto Care's participation in the dealership program. Because there is a material fact at issue, summary judgment is unavailable. Consequently, we reverse the trial court judgment dismissing the claim for promissory estoppel and remand the case for further proceedings.[27]

*By the Court.*—Judgment affirmed in part and reversed in part with directions.

[27] U.S. Oil also contends that the Theune letter is a subsequent written confirmation of the promise sufficient to satisfy sec. 241.02(1)(b), Stats. It does not contend that the letter is sufficient to create a contract, but rather, that the letter is sufficient to allow enforcement of the promise through promissory estoppel. Because we conclude that sec. 241.02(1)(b) does not bar a claim under promissory estoppel, we do not need to address this issue.