COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2023AP605**
**2023AP1411**

Cir. Ct. No. 2020CV46

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

KAREN ZAHRAN AND ROBIN ZAHRAN,

   PLAINTIFFS-APPELLANTS,

 V.

CHRISTINE RADEMACHER, RUTH RADEMACHER AND GREG SEITZ,

   DEFENDANTS-RESPONDENTS.

APPEALS from orders and a judgment of the circuit court for Door County: TROY L. NIELSEN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Karen Zahran and Robin Zahran, pro se, appeal an order granting Christine Rademacher, Ruth Rademacher, and Greg Seitz's (collectively, "Rademachers") motion for summary judgment and from an order granting the Rademachers' motion for sanctions and attorney fees.[1]   Robin also appeals a judgment requiring him to pay attorney fees to the Rademachers' attorney. We affirm the summary judgment and sanctions orders, but we reverse the judgment requiring Robin to pay attorney fees because Robin was not given an opportunity to review a detailed accounting of the attorney fees, which violated his due process rights.  We remand for the circuit court to provide Robin an opportunity to review, and object to, the detailed accounting and requested fees.[2]

## BACKGROUND

¶2     This lawsuit involves a real estate dispute between the parties which arose after the Zahrans submitted an offer to purchase a piece of property from an unrelated property owner.   The offer was denied without a counteroffer.   The Zahrans believed the denial was racially motivated.   The Zahrans allege that, thereafter, they agreed to a plan with the Rademachers in which Christine would first purchase the property and subsequently divide the water frontage "equally" with the Zahrans.

¶3     Ruth eventually offered to buy the property from the property owner, who accepted Ruth's offer for an agreed-to amount and $15,000 in earnest money. Only Ruth's name was listed on the purchase documents exchanged between Ruth

---

[1] Where appropriate, we refer to each individual using his or her first name, given the shared surnames of the parties.  In the sanctions context, we refer to Robin individually because the order was against him only, not Karen.

[2] We granted the Zahrans' motion to consolidate appeal Nos. 2023AP605 and 2023AP1411.

and the property owner. Ruth and Christine later provided a copy of the purchase agreement to the Zahrans for their review. The Zahrans wrote a check to Christine for $7,500, representing one-half of the earnest money, and another check for $100,000, representing one-half of a down payment for the property.

¶4    Following these events, issues arose and the property was never split between the parties. The Zahrans filed the present lawsuit alleging eleven causes of action. The Rademachers filed a motion for summary judgment, which the circuit court granted.

¶5    The circuit court determined that any potential agreement between the Rademachers and the Zahrans would have been a joint venture to purchase real estate and, therefore, needed to be in writing pursuant to the statute of frauds. *See* WIS. STAT. § 706.02 (2021-22).[3]   Because there was no written contract between the parties, the court found that the Zahrans could not succeed on their breach of joint enterprise, declaratory judgment, breach of contract, and promissory estoppel claims. The court also concluded that the parties' discussions regarding purchasing the property could not be enforced in equity because the evidence demonstrated that the Zahrans could not prove, by clear and satisfactory evidence, the elements of an oral contract. *See* WIS. STAT. § 706.04.

¶6    The circuit court also granted the Rademachers' motion for summary judgment with respect to the Zahrans' remaining seven claims. Regarding the Zahrans' "fraud in the inducement claim," the court concluded that there was no legally enforceable contract or agreement and that the Zahrans failed to allege "any fraudulent behavior that would fall outside of the terms of the agreement/contract

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the parties were working toward[].” The court granted the Rademachers summary judgment on the Zahrans’ racketeering claim because it found that there were no genuine issues of material fact and that the Zahrans were not entitled to relief as a matter of law based on the facts. The court granted the Rademachers’ summary judgment on the remaining claims—strict and negligent misrepresentation, “conversion and civil theft,” and “breach of constructive trust and unjust enrichment”—because the Zahrans failed to respond to the Rademachers’ arguments.[4]

¶7 The parties also filed competing motions for sanctions and attorney fees. The circuit court granted the Rademachers’ motion and denied the Zahrans’ motion without a hearing after finding that Robin’s “behavior was egregious” for several listed reasons. The court awarded the Rademachers attorney fees and ordered the Rademachers’ attorney to file, under seal, a detailed accounting of the work he performed on the case. The accounting was submitted under seal, and without review or input by Robin, the court ordered him to pay the Rademachers’ attorney over $28,000. These appeals follow.

## DISCUSSION

### I. Motion for summary judgment

¶8 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Dow Fam., LLC v. PHH Mortg. Corp.*, 2013 WI App 114, ¶13, 350 Wis. 2d 411, 838 N.W.2d 119. Summary judgment “shall be rendered if the pleadings, depositions, answers to interrogatories, and

---

[4] The circuit court also granted the Rademachers’ motion for summary judgment with respect to the Zahrans’ claim for intentional misrepresentation because the Zahrans failed to “assert any facts to support this cause of action.” The Zahrans do not challenge the court’s decision with respect to their intentional misrepresentation claim.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶9     The Zahrans first contend that the circuit court "failed to dispose of all the pending motions and issues" before it issued the summary judgment order and that the court's order is non-appealable because it constituted a nonfinal order.[5]

¶10     To preserve judicial resources, a circuit court is generally permitted to address motions for summary judgment even when there are other pending motions or issues before the court. *See **Jorgensen v. Water Works, Inc.***, 218 Wis. 2d 761, 772, 582 N.W.2d 98 (Ct. App. 1998). A court's decision to address a motion for summary judgment prior to addressing other motions or issues is reviewed for an erroneous exercise of discretion. ***Id.***

---

[5] The pending motions and issues included the Rademachers' counterclaim declaring Ruth's interest in the property, the Zahrans' combined motions for judgment on the pleadings and to compel discovery, the Zahrans' multiple motions for "prosecution misconduct" and to strike the Rademachers' summary judgment brief, and, according to the Zahrans, the "status" of their payments to the Rademachers.

Many of the Zahrans' arguments on appeal are undeveloped and lack any legal support. For example, the Zahrans argue that the circuit court's summary judgment order was "begotten through fraud" and issued in violation of their due process rights. However, the Zahrans do not explain or develop these arguments further. Thus, to the extent we do not directly address some of the Zahrans' arguments, we deem them to be undeveloped and/or unsupported by legal authority. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments or arguments unsupported by references to legal authority).

On appeal, the Zahrans also moved to "strike" the Rademachers' statement of the case. The Zahrans argue that many of the Rademachers' statements in that section are inaccurate or argumentative. *See **Arents v. ANR Pipeline Co.***, 2005 WI App 61, ¶4 n.2, 281 Wis. 2d 173, 696 N.W.2d 194. After independently reviewing the Rademachers' statement of the case and their record citations, we disagree that any of the complained of statements are inaccurate or improperly argumentative, and we reject the Zahrans' motion to strike.

¶11    Here, the circuit court's decision to first hear and decide the Rademachers' motion for summary judgment was reasonable because, as the court stated to the parties, the lawsuit was "over-litigated" due to the Zahrans' "efforts to complicate a simple situation" and, importantly, the court's decision rendered moot the remaining pending motions and issues, including the Zahrans' motions to strike the Rademachers' summary judgment briefing.  Further, the Zahrans fail to explain how or why additional discovery would have affected the motion for summary judgment.

¶12    We also reject the Zahrans' argument that the circuit court's order granting the motion for summary judgment was a nonfinal order.  The court's order specifically stated that it was a final order for purposes of appeal, and, indeed, it disposed of the entire matter in litigation.  *See Tyler v. RiverBank*, 2007 WI 33, ¶26, 299 Wis. 2d 751, 728 N.W.2d 686 (concluding that a document constitutes the final document for purposes of appeal when it has been entered by the circuit court, disposes of the entire matter in litigation, and states on the face of the document that it is the final document for purposes of appeal).  Under these circumstances, the court was not procedurally barred from granting the Rademachers' motion for summary judgment, and its order doing so is appealable.

¶13    The Zahrans next argue that the circuit court erred by granting the Rademachers' motion for summary judgment on their breach of joint enterprise, declaratory judgment, breach of contract, and promissory estoppel claims because

the "unambiguous" oral land agreement is enforceable despite its failure to comply with the statute of frauds.[6]

¶14     Subject to certain exclusions, statute of frauds applies to "every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." WIS. STAT. § 706.001(1), (2). "[A] joint adventure or a partnership to engage in the sale or purchase of real estate is held to be a contract respecting an interest in lands, and void under the statute of frauds, unless in writing, or unless sufficiently performed to take the same out of the statute." *Schaefer v. Schaefer*, 72 Wis. 2d 600, 607, 241 N.W.2d 607 (1976) (citation omitted).   Pursuant to WIS. STAT. § 706.02(1), transactions under § 706.001(1) "shall not be valid unless evidenced by a conveyance" that meets specific requirements set out in the statute.  Sec. 706.02(1).  A "conveyance" is "a written instrument, evidencing a transaction governed by this chapter, that satisfies the requirements of [§] 706.02." WIS. STAT. § 706.01(4).

¶15     The discussions between the parties in this case involved a joint adventure or partnership to engage in the sale or purchase of real estate.  In addition, there is no dispute that the discussions were not memorialized in a written instrument, much less one that satisfied the requirements of WIS. STAT. § 706.02. Further, the Zahrans do not argue the applicability of any exclusion under WIS. STAT. § 706.001(2).

---

[6] Although the Zahrans challenge the circuit court's decision with respect to their fraud in the inducement claim, they do so by arguing only that whether there was an agreement between the parties was a genuine issue of material fact precluding summary judgment.  As we will explain, the undisputed facts demonstrate that there was no legally enforceable agreement.  Therefore, we affirm the court's decision to grant the Rademachers' motion for summary judgment on this claim without addressing whether an agreement was necessary to pursue the claim.  *See Service Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35 (stating that appellate courts should not "step out of [a] neutral role to develop or construct arguments for parties").

¶16     Rather, the Zahrans contend that WIS. STAT. § 706.04 applies, which allows equitable enforcement of an agreement that is invalid under the statute of frauds. *See Spensely Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 128 Wis. 2d 279, 287, 381 N.W.2d 601 (Ct. App. 1985). An agreement may be enforceable under § 706.04 if "all of the elements of the transaction are clearly and satisfactorily proved" and one of three exceptions applies. Sec. 706.04(1)-(3). "The elements that must be established to fulfill the first requirement correspond to the formal requisites of a valid conveyance under [WIS. STAT. §] 706.02." *Nelson v. Albrechtson*, 93 Wis. 2d 552, 560-61, 287 N.W.2d 811 (1980). As is pertinent here, § 706.02(1) dictates that a conveyance must identify the land in which an interest is created and identify the interest conveyed, including "any material term." Sec. 706.02(1)(b), (c).

¶17     According to the Zahrans, "there was an agreement in place" prior to Ruth purchasing the property, but the Rademachers attempted to change that agreement after the purchase. The circuit court concluded that WIS. STAT. § 706.04 did not apply because the "'terms' of the agreement were always in a constant state of flux." We agree for several reasons that the record demonstrates that the Zahrans cannot prove by clear and satisfactory evidence that the elements of an oral contract existed between the parties.

¶18     First, the discussions between the parties did not identify the land in interest with "reasonable certainty." *See Anderson v. Quinn*, 2007 WI 260, ¶29, 306 Wis. 2d 686, 743 N.W.2d 492 (citation omitted). Although a legal description is not required to satisfy WIS. STAT. § 706.02(1)(b), the land must be described in such a way that "by the aid of the facts and circumstances surrounding the parties at the time the court can with reasonable certainty determine the land which is to be conveyed." *Anderson*, 306 Wis. 2d 686, ¶30 (citation omitted).

¶19 The uncontroverted evidence in the record establishes that, while there were discussions to split the property "50/50," with the Rademachers taking the south half of the property and the Zahrans taking the north half of the property, the property division itself was never defined, or agreed to, in specific terms during any of the parties' discussions prior to Ruth's purchase. The parties did not have the property—and their envisioned split of the property—mapped, surveyed, or specifically described prior to Ruth's purchase.

¶20 Significantly, Robin testified that the specifics of the property division were not discussed until *after* Ruth purchased the property. As the parties discovered after Ruth's purchase, the property could not be split "50/50" as originally envisioned because the cottage—which was initially planned to be on the Rademachers' side of the property—had a well and septic system that would have been on the Zahrans' side of the property if the property were divided as originally envisioned. Following the purchase, Robin and Seitz met and discussed four different options for dividing the property, all of which the Zahrans ultimately rejected. Because the makeup of the property split was continuously changing, a "disinterested person examining" the parties' discussions "could not specify with reasonable certainty what land was subject to" transfer to the Zahrans following Ruth's purchase of the property. *See **303, LLC v. Born***, 2012 WI App 115, ¶11, 344 Wis. 2d 364, 823 N.W.2d 269.

¶21 Second, the parties' discussions did not conclude with an agreement on the "material term[s]" of the transfer of the land interest to the Zahrans. *See* WIS. STAT. § 706.02(1)(c). For example, one of the four options provided that the Zahrans would grant the Rademachers easements for the septic system and a driveway. Each option also addressed different ways the parties would pay for demolishing a house on the property. At one point, the parties discussed sharing the

cost of demolishing the house, but at another point, they discussed that the Zahrans would be exclusively financially liable for demolishing it.

¶22    Moreover, the parties each paid $100,000 for the down payment and $7,500 for earnest money, and, at some point early in the discussions, agreed that they would split the cost of the property purchase in half. However, the parties also discussed appraising the value of the cottage and, according to Robin, crediting the appraised value to the Zahrans' purchase price. As the Rademachers argue on appeal, the property's purchase would not be split in half if the cottage's value was credited to the purchase price for the Zahrans. *See **Headstart Bldg., LLC v. National Ctrs. for Learning Excellence, Inc.***, 2017 WI App 81, ¶17, 379 Wis. 2d 346, 905 N.W.2d 147 ("Price is an essential term for a contract for the sale of real estate; a contract is void unless the price is sufficiently 'certain or capable of being ascertained from the agreement itself.'" (citation omitted)). Nothing in the record demonstrates that the parties agreed on how to split the cost of the property before, or after, Ruth's purchase of the property.

¶23    Even if there was evidence in the record for the Zahrans to demonstrate by clear and satisfactory evidence that the elements of an oral contract existed between the parties, we agree with the Rademachers that neither WIS. STAT. § 706.04(2) nor (3) apply. Section 706.04(3) applies when the "party against whom enforcement is sought is equitably estopped from asserting the deficiency." ***Id.*** This section closely resembles the doctrine of part performance and requires: "(1) action or inaction which induces, (2) good faith reliance by another, (3) to that person's detriment." ***Gillespie v. Dunlap***, 125 Wis. 2d 461, 466, 373 N.W.2d 61 (Ct. App. 1985).

¶24     Here, although the Zahrans made partial payments—one-half of the earnest money and one-half of the down payment—the Rademachers offered the Zahrans four options either to divide the property in various ways or to return the money to the Zahrans.  Under these circumstances, the Zahrans cannot now claim that their refusal to accept one of the four options—including a complete refund of their payments—resulted in a detriment to them because the "detriment so incurred" may "be effectively recovered" without enforcing the original discussions of dividing the property.  *See* WIS. STAT. § 706.04(3).

¶25     Moreover, the Rademachers did not accept the Zahrans' payments knowing that it would be detrimental to the Zahrans.  *See* WIS. STAT. § 706.04(3)(b). The four options were provided to the Zahrans *after* the parties discovered that the property could not be divided as originally envisioned and *after* Ruth purchased the property.  Further, the Zahrans did not have possession of the property at any point. *See* § 706.04(3)(a) (requiring the "grantee" to be "admitted into substantial possession or use of the premises" or to have retained "such possession or use after termination of a prior right thereto"); *Schaefer*, 72 Wis. 2d at 609.

¶26     We further conclude that the Rademachers were entitled to summary judgment because WIS. STAT. § 706.04(2) does not apply to the facts of this case.[7] Section 706.04(2) applies when the "party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied."  *Id.* Unjust enrichment occurs when one party confers a benefit upon another party, the other party appreciates or knows of the benefit, and retention of the benefit without

---

[7] We therefore affirm the circuit court's summary judgment order with respect to the Zahrans' "breach of constructive trust and unjust enrichment" claim on statute of frauds grounds. *See U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 88, 440 N.W.2d 825 (Ct. App. 1989) (concluding that we may sustain a circuit court's holding even if the theory or reasoning we rely upon is different than that relied upon by the circuit court).

payment would be inequitable. *Halverson v. River Falls Youth Hockey Ass'n*, 226 Wis. 2d 105, 115, 593 N.W.2d 895 (Ct. App. 1999). "Under unjust enrichment, a person is seeking the return of money actually expended; there must be a benefit conferred upon the defendant by the plaintiff." *Jorgensen v. Ketter*, 82 Wis. 2d 80, 85, 260 N.W.2d 665 (1978). A down payment for property can constitute valuable consideration warranting the applicability of unjust enrichment. *See id.*

¶27 The Rademachers do not dispute that the Zahrans issued payments to them for the purchase of the property. The record also conclusively demonstrates that Ruth used that money as a down payment to purchase the property. Therefore, the Rademachers expended the Zahrans' money and received a benefit in doing so. However, the Rademachers attempted to return an amount equivalent to the Zahrans' payments to the Zahrans following the failed negotiations to divide the property. The Zahrans refused to accept the Rademachers' offer, and that money has been held in a trust account owned by the Rademachers' attorney. Therefore, the Rademachers have already attempted to return the money, and the Zahrans can collect that money at any time. In all, there were no genuine issues as to any material fact, and the Rademachers were entitled to judgment as a matter of law.

¶28 The circuit court also granted the Rademachers' motion for summary judgment with respect to the Zahrans' remaining three claims—strict and negligent misrepresentation and "conversion and civil theft"—because the Zahrans' brief filed in opposition to the Rademachers' motion was "non-responsive" regarding those

claims. On appeal, the Zahrans contend that they did, however, respond to each of the Rademachers' arguments with respect to those claims.[8]

¶29 In the Rademachers' motion for summary judgment, they argued that they were entitled to summary judgment on the Zahrans' "conversion and civil theft" claim because, among other things, the economic loss doctrine barred that claim. The Zahrans failed to respond to this argument and, instead, restated the elements of the claim and cited case law relating to constructive trusts. Thus, we agree with the circuit court that the Zahrans' reply was non-responsive, and we affirm the court's order on this claim.

¶30 We agree with the Zahrans, however, that they did respond to the Rademachers' motion for summary judgment with respect to the common law misrepresentation claims. Nevertheless, the Zahrans' brief simply recited their argument in support of their fraud in the inducement claim, which applies only to intentional misrepresentation. *See Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶42, 283 Wis. 2d 555, 699 N.W.2d 205. "[T]he economic loss doctrine bars misrepresentation claims based in negligence and strict responsibility." *Kaloti Enters.*, 283 Wis. 2d 555, ¶30. Therefore, we affirm the circuit court's grant of summary judgment on the Zahrans' common law misrepresentation claims. *See U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 88, 440 N.W.2d 825 (Ct. App. 1989).

---

[8] The Zahrans also assert that the circuit court granted the Rademachers summary judgment on the Zahrans' racketeering claim because the court found that their response brief was "non-responsive." However, the court granted the Rademachers summary judgment on the Zahrans' racketeering claim because it found that there were no genuine issues of material fact and that the Zahrans were not entitled to relief as a matter of law based on the facts. The Zahrans do not challenge the court's holding in that regard, and we will not address that claim further. *See Service Emps. Int'l Union, Loc. 1*, 393 Wis. 2d 38, ¶24.

**II. Sanctions motion**

¶31     The Zahrans next argue that the circuit court erred by granting the Rademachers' motion for sanctions without first providing the Zahrans adequate notice and an opportunity to respond.  According to the Zahrans, the court violated their due process rights as well as WIS. STAT. §§ 801.14(1), 801.15(4), and 802.05.

¶32     First, WIS. STAT. § 802.05—which relates to sanctions for misrepresentations to a circuit court—was not implicated below because the Rademachers filed a motion for sanctions pursuant to the circuit court's inherent authority to issue sanctions for "egregious" conduct.  *See Schultz v. Sykes*, 2001 WI App 255, ¶¶9, 12, 248 Wis. 2d 746, 638 N.W.2d 604.  The court issued its sanctions order pursuant to that authority.  Accordingly, § 802.05, and the timing requirements contained therein, did not apply to the Rademachers' motion.  *See Ten Mile Invs., LLC v. Sherman*, 2007 WI App 253, ¶5, 306 Wis. 2d 799, 743 N.W.2d 442.

¶33     In addition, WIS. STAT. § 801.14 does not require a circuit court to hold a hearing.  Section 801.14(1) states that "every written motion" must "be served upon each of the parties."  *See also Holman v. Family Health Plan*, 227 Wis. 2d 478, 490, 596 N.W.2d 358 (1999).  The Zahrans do not contend that they failed to receive notice of the motion for sanctions or the motion itself.  To be sure, an affidavit of mailing was submitted to the circuit court, which showed that the notice of the motion, the motion itself, and the exhibits submitted with the motion were mailed to the Zahrans on October 18, 2022.  These same documents were also delivered to the Zahrans through the court's electronic filing system.  The Zahrans' motion for judgment on the pleadings and to compel discovery filed in

December 2022 referenced the Rademachers' sanctions motion, thus evidencing that they received notice of the Rademachers' motion.

¶34    Under these circumstances, we further conclude that the circuit court did not commit reversible error by failing to hold a hearing on the sanctions motion pursuant to WIS. STAT. § 801.15(4). That statute states, in relevant part, that "[a]ll written motions shall be heard on notice unless a statute or rule permits the motion to be heard ex parte." Both parties in this case filed competing motions for sanctions pursuant to the court's inherent authority to issue sanctions. The Zahrans filed their motion on September 28, 2022, and the Rademachers filed their motion on October 17, 2022.

¶35    Importantly, the Zahrans' motion for sanctions requested that the circuit court hold an evidentiary hearing or, "in the alternative, issue an order" granting the Zahrans' motion without a hearing. Further, the Zahrans sent a letter to the court on October 19, 2022, asking it to "grant judgment against the [Rademachers]" because the Rademachers "failed to respond" to the Zahrans' motion. Similarly, the Rademachers' motion for sanctions requested an evidentiary hearing but also moved the court for an order granting sanctions against the Zahrans. At no point did either party request a hearing on the other party's motion for sanctions.

¶36    Thus, to the extent that WIS. STAT. § 801.15(4) required the circuit court to hold an evidentiary hearing on a sanctions motion, the Zahrans—and the Rademachers—expressly asked the court to issue a sanctions decision without first holding a hearing, and then both parties failed to respond to the other's motion. *See Atkinson v. Mentzel*, 211 Wis. 2d 628, 642-43, 566 N.W.2d 158 (Ct. App. 1997) ("Generally, we will not review invited error.").

15

¶37    For similar reasons, the Zahrans were not denied due process when the circuit court granted the Rademachers' sanctions motion and denied the Zahrans' sanctions motion without first holding a hearing. "The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *American Eagle Ins. Co. v. Wisconsin Ins. Sec. Fund*, 2005 WI App 177, ¶44, 286 Wis. 2d 689, 704 N.W.2d 44 (citation omitted).

¶38    Over five months passed between the time the parties filed their motions for sanctions and the time the circuit court issued its order addressing those motions. During that time, neither party filed a response to the other's motion for sanctions, despite the fact that both had ample opportunity to file responses. Accordingly, the court was free to base its decisions on the voluminous record before it.

¶39    The Zahrans next take issue with the circuit court's decision to issue sanctions against Robin. A circuit court is "empowered to protect itself from those egregious practices which threaten the dignity of the judicial process." *Schultz*, 248 Wis. 2d 746, ¶12. "Wisconsin permits dismissal as a sanction for misconduct only where the plaintiff has acted in bad faith or engaged in egregious acts of misconduct." *Id.*, ¶14. Egregious misconduct has been defined as misconduct which is extreme, substantial, and persistent, though not necessarily intentional. *See Dane Cnty. Dep't of Hum. Servs. v. Mable K.*, 2013 WI 28, ¶70, 346 Wis. 2d 396, 828 N.W.2d 198. A circuit court has the inherent authority to sanction a party for misconduct that occurs during litigation by ordering payment of the opposing party's attorney fees. *See State ex rel. Godfrey & Kahn, S.C. v. Circuit Ct. for Milwaukee Cnty.*, 2012 WI App 120, ¶43, 344 Wis. 2d 610, 823 N.W.2d 816.

¶40    "[W]e review a circuit court's decision to impose sanctions, as well as the particular sanction it chooses, for an erroneous exercise of discretion." *Schultz*, 248 Wis. 2d 746, ¶8.   Under this standard, we will affirm the court's decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion.  *Id.*

¶41    Here, the circuit court issued monetary sanctions against Robin, although the court also stated that it would have dismissed the Zahrans' claims as a sanction if it had not already granted the Rademachers' motion for summary judgment.   Specifically the court found that Robin's "behavior was egregious" because:

> 1. The volume of filings and emails were completely over the top and unwarranted in this relatively simple case.
>
> 2. The use of name calling is out of line.
>
> 3. Asserting [that the Rademachers' attorney] was treating [Robin] a particular way due to his ethnicity was inappropriate, unjustified and down[]right disgusting.

The court stated that it had never experienced a case as "over litigated as much as this case has been by the [Zahrans], in particular, [Robin]."  It found that Robin's litigation strategy in the case was "victory by submission."  For those reasons, the court granted the Rademachers' motion for sanctions and ordered Robin to pay the Rademachers' attorney for his work on the case during the period in which the Zahrans appeared pro se.

¶42    As the Rademachers argue, the Zahrans' arguments against the circuit court's findings focus almost entirely on whether there was an agreement to purchase and divide the property and whose fault it was that agreement never came

17

to fruition. However, these arguments do not explain how or why the court's findings regarding Robin's conduct during this litigation were clearly erroneous.

¶43 Robin sent the Rademachers' attorney more than 250 emails, many unsolicited, throughout, and leading up to, the litigation, even after the attorney repeatedly asked Robin to stop. In many of these emails, Robin attempted to intimidate the Rademachers' attorney, used abusive language, and baselessly accused the Rademachers and their attorney of intentionally committing fraud and perjury.[9] For example, Robin stated in an email that he has "nothing against Jews, many are and were associates in [b]usiness and partners," "but obviously you may be acting this way and going out of your way because I am of Palestinian de[s]cent." At least four of the emails included statements that the Rademachers and their attorney would face legal consequences if the Rademachers' attorney did not convince his clients to accept the Zahrans' offers to settle or withdraw various motions.

¶44 Robin's accusations of fraud and perjury continued in his circuit court filings. The Zahrans filed multiple motions alleging that the Rademachers and their attorney were engaging in fraud to "mislead the court." The Zahrans also accused the Rademachers' attorney in a court filing of making "untruthful and deceptive representations to the court and coaching witnesses at their depositions and coordinating defendants' answers to interrogatories and plaintiffs' complaint."

¶45 Given the above evidence, the Zahrans fail to explain how the circuit court's findings in support of its sanctions decision were clearly erroneous. Based

---

[9] Importantly, both on appeal and in the circuit court, the Zahrans failed to provide evidence that the Rademachers or their attorney engaged in fraud or perjury.

18

on the court's findings, which are supported by the record, the court could reasonably conclude that Robin persistently, and to a substantial degree, engaged in misconduct.[10]

### III. Attorney fees

¶46    Notwithstanding the above analysis, we agree with Robin that he was denied due process when the circuit court issued a judgment requiring him to pay attorney fees without first allowing him to review or challenge the amount and accounting.

¶47    The circuit court awarded the Rademachers attorney fees and ordered the Rademachers' attorney to file, under seal, a detailed accounting of the work he performed on the case. As stated earlier, the attorney's accounting was submitted under seal, and the court issued a judgment requiring Robin to pay the Rademachers' attorney over $28,000. *See* WIS. STAT. § 801.21. The court never provided Robin with an opportunity to review and, if necessary, object to the accounting prior to ordering Robin to pay the amount. Instead, the court conducted an in camera review and determined whether the fees were appropriate without input from the Zahrans.

¶48    Consequently, Robin never had an opportunity to be heard regarding the reasonableness of the fees sought as a sanction. *See American Eagle Ins. Co.*, 286 Wis. 2d 689, ¶44; *Jensen v. McPherson*, 2004 WI App 145, ¶¶36-38, 275 Wis. 2d 604, 685 N.W.2d 603 (stating that an attorney fees award must be reasonable). "Like other sanctions, attorney[] fees certainly should not be assessed

---

[10] Robin does not take issue with the nature of the circuit court's sanction—requiring him to pay the Rademachers' attorney fees. We therefore need not consider whether that was an appropriate remedy.

lightly or without fair notice and an opportunity for a hearing on the record." ***Roadway Exp., Inc. v. Piper***, 447 U.S. 752, 767 (1980). Thus, we reverse the circuit court's judgment awarding $28,000 to the Rademachers' attorney, and we remand with instructions to allow Robin to review the claimed fees and object if necessary prior to awarding attorney fees.

¶49 No costs to either party.

*By the Court.*—Orders and judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.